***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, modifies and affirms the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at the hearing as: *Page 2 
 STIPULATIONS
1. The parties are properly denominated.
2. Defendant-Carrier provided workers' compensation insurance coverage to Defendant-Employer and is properly denominated in the caption.
3. As of the date of the alleged accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. The parties are properly before the North Carolina Industrial Commission.
5. The North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of these proceedings.
6. The date of the alleged accident was February 20, 2007/February 21, 2007.
7. Plaintiff's average weekly wage will be stated on a Form 22 to be filed by Defendants.
8. Plaintiff received no temporary total or temporary partial disability compensation.
9. Plaintiff received no medical compensation under the North Carolina Workers' Compensation Act.
10. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 (a) Stipulated Exhibit One: Various documents, including:
 (1) North Carolina Industrial Commission forms and filings;
 (2) Plaintiff's recorded statement dated April 2, 2009;
 (3) Plaintiff's personnel file;
 (4) Discovery responses;
 (5) Plaintiff's medical records; *Page 3 
 (b) Plaintiff's Exhibit One: Plaintiff's handwritten drawing of layout of Defendant-Employer;
 (c) Plaintiff's Exhibit Two: Page 167 (appearing in the lower right-hand corner of the document) / Page 470 (appearing in the upper right-hand corner) of Stipulated Exhibit One.
 *********** ISSUES
The issues to be determined are:
1. Whether Plaintiff sustained an injury by accident or specific traumatic event, and if so, to what workers' compensation benefits is she entitled?
2. Whether Plaintiff gave timely notice of her workers' compensation claim?
3. Whether Plaintiff's alleged work injury caused or materially aggravated her current cervical spine condition?
4. Whether Plaintiff's current cervical spine condition is causally related to her December 22, 2008 motor vehicle accident?
5. Whether Defendants are entitled to a credit for payment of short-term and long-term disability benefits to Plaintiff?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 43 years old, with a date of birth of December 13, 1967. Plaintiff has a high school diploma, attended college for one and a half years, and later took some child *Page 4 
development courses at a community college. Prior to working for Defendant-Employer, Plaintiff's employment history included working in a day-care center for children and as a cashier at various stores.
2. In 2003, Plaintiff began working for Defendant-Employer as a cashier. She also drove a school bus. Approximately one to two years later, Defendant-Employer promoted Plaintiff to a customer service manager position. Plaintiff's duties in this new position included managing the cashiers at the front of the store, assisting the cashiers with any transactions needing management approval, assisting customers with difficulties or needs they may have while shopping, and ensuring that the store was neat and tidy for the morning shift, including collecting misplaced merchandise in shopping carts and distributing such items to their appropriate departments. Toward the end of Plaintiff's employment with Defendant-Employer as a customer service manager, she routinely worked the third or overnight shift which began at 11:00 p.m. and ended the next day at 7:00 a.m.
3. On February 19, 2007, Plaintiff reported to work for Defendant-Employer as a customer service manager for the third shift, which was to end on the morning of February 20, 2007. Although the parties stipulated that Plaintiff's alleged work injury occurred on the third shift of February 20, 2007/February 21, 2007, it appears from the evidence of record that Plaintiff is alleging that her work injury occurred on the February 19, 2007/February 20, 2007 shift. During this overnight shift, Plaintiff alleges that she was pushing and pulling a long line of approximately eight or nine shopping carts strapped together containing various merchandise to be distributed throughout the store to the appropriate departments. Plaintiff testified that in order to steer all of the shopping carts and keep them moving without hitting any displays on the floor, she had to push a shopping cart with her left hand and pull the carts trailing behind the front cart *Page 5 
with her right hand. Plaintiff testified that as she was straightening the line of shopping carts strapped together after turning them to avoid hitting some cash registers at the front of the store, she heard and felt a "snap" and began feeling pain in her right arm. Plaintiff testified that she had difficulty completing the merchandise returns.
4. Although Plaintiff testified that she continued to experience right-sided pain, she reported to work for her next shift, which began at 11:00 p.m. on February 20, 2007. Plaintiff requested permission to leave work early to seek medical treatment, but did not inform the assistant manager on duty or anyone else employed by Defendant-Employer at this time that she experienced a work-related injury on her February 19, 2007/February 20, 2007 shift, or that her need for medical treatment was due a work-related injury. The assistant manager on duty refused her request to leave early. Plaintiff completed her shift at approximately 7:00 a.m. on the morning of February 21, 2007,
5. Later in the day on February 21, 2007, Plaintiff presented to the emergency department of New Hanover Regional Medical Center in Wilmington, North Carolina with complaints of right chest wall and right arm pain. Plaintiff did not inform the physician on duty at the time that her right arm pain began while she was pushing and pulling carts at work the previous day, or that her complaints were in any way work-related. Plaintiff received a diagnosis of right biceps tendonitis, and instructions to remain out of work for the next three days.
6. On February 26, 2007, Plaintiff presented to Dr. Benjamin Olufemi Akiwumi, an internal medicine specialist and her primary care physician, with continued complaints of right chest wall and right arm pain. There is no mention in Dr. Akiwumi's office note from this visit that Plaintiff informed him that her right arm pain began at work on February 19, 2007/February 20, 2007 while pushing and pulling shopping carts. Dr. Akiwumi diagnosed Plaintiff with right *Page 6 
elbow tendonitis with radiculopathy and sinusitis, and completed a medical leave of absence form removing her from work due to right arm tendonitis and sinusitis until March 5, 2007. Dr. Akiwumi did not indicate on the medical leave of absence form that Plaintiff's conditions were work-related.
7. Plaintiff had a pre-existing history of right-sided chest wall pain. On October 26, 2006, October 30, 2006, and December 4, 2006, Dr. Akiwumi treated Plaintiff for complaints of right-sided chest wall pain. Prior to February 2007, Dr. Akiwumi treated Plaintiff on a regular basis for various complaints, and Plaintiff took medical leaves of absence for various conditions unrelated to her right arm.
8. On March 5, 2007, March 19, 2007, and April 3, 2007, Dr. Akiwumi completed medical leave forms for Plaintiff. On the March 5, 2007 and March 19, 2007 medical leave of absence forms, Dr. Akiwumi indicated that Plaintiff's conditions which required medical leave were not due to her employment in any way. On the April 3, 2007 medical leave of absence form, Dr. Akiwumi failed to indicate whether Plaintiff's conditions were due to her employment.
9. On March 30, 2007, Plaintiff underwent a cervical spine MRI, which Dr. Akiwumi interpreted as revealing a herniated disc at the C6-C7 level of the spine impinging on the right nerve root at the C7 neural foramin. Dr. Akiwumi diagnosed Plaintiff with a cervical disc herniation, and referred her to Dr. Robert Mark Rodger, an orthopaedist. On April 13, 2007, Dr. Akiwumi signed another medical leave of absence form indicating that he was continuing to keep Plaintiff out of work due to a "herniated disc C6/C7 with C7 impingement." Dr. Akiwumi did not indicate whether Plaintiff's diagnosis was due to her employment in any way.
10. On April 13, 2007, Plaintiff presented to Mr. Stephen J. Free, a physician's assistant for Dr. Rodger, with complaints of burning pain on the right side of her neck down into *Page 7 
the right upper extremity with occasional numbness and tingling of the right hand. Plaintiff denied that her pain was due to an injury. On April 24, 2007, Plaintiff saw Dr. Rodger, who reviewed the March 30, 2007 cervical spine MRI. Dr. Rodger recommended that Plaintiff undergo an anterior cervical discectomy and fusion at the C6-C7 level of the spine. Plaintiff declined surgery at that time.
11. On May 2, 2007, Dr. Rodger completed a medical leave of absence form taking Plaintiff out of work from April 13, 2007 through an indeterminate period of time. Dr. Rodger indicated that Plaintiff's leave of absence was not due to a work injury. Defendant-Employer approved this medical leave of absence.
12. Approximately 15 months after Dr. Rodger recommended surgery, on July 28, 2008, Plaintiff underwent an anterior cervical discectomy with instrumentation and dissection of the disc at the C6-C7 level of the spine. Dr. Rodger noted that Plaintiff had been experiencing problems for a substantial period of time due to an "obvious" disc herniation at the C6-C7 level of the spine, including right radiculopathy which did not respond to conservative treatment. On August 12, 2008, Plaintiff returned to Dr. Rodger, who noted that her arm pain was better.
13. Although Dr. Rodger requested that Plaintiff return to him six weeks following her August 12, 2008 visit, she did not return to him until nearly six months later on January 27, 2009. On that date, Plaintiff reported to Dr. Rodger that her neck and right arm pain continued to improve following her July 28, 2008 surgery. Plaintiff also reported to Dr. Rodger that she was in a motor vehicle accident on December 22, 2008 in which another vehicle hit her from behind, damaging her vehicle to the point that it was a total loss. Since the December 22, 2008 motor vehicle accident, Plaintiff described experiencing a significant increase in her neck and *Page 8 
right arm pain, and new symptoms of left arm pain and numbness, as well as lower back and right leg pain.
14. On January 26, 2009, Plaintiff filed a Form 18 notice of accident and claim of injury alleging that she sustained a work injury on her February 20, 2007/February 21, 2007 shift. Plaintiff listed her spine as the body part injured, and described the injury as "loading and pushing carts[;] herniated disc."
15. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's first notice to Defendants of her alleged February 19, 2007/February 20, 2007 work injury occurred when she filed her Form 18 on or about January 26, 2009. The Form 18 was the first mention to employer that "loading and pushing carts" caused or contributed to Plaintiff's symptoms for which she sought medical treatment beginning on February 21, 2007.
16. On March 9, 2009, Plaintiff underwent a cervical and lumbar spine myelogram. Dr. Rodger interpreted the cervical spine myelogram as revealing a small disc herniation at the C5-C6 level of the spine as well as a solid fusion at the C6-C7 level of the spine, and interpreted the lumbar myelogram as normal. The small disc herniation at the C5-C6 level of the spine was a new finding. Dr. Rodger felt that Plaintiff's ongoing right arm pain was likely due to the small disc herniation at the C5-C6 level of the spine, and recommended pain management to treat this new finding. With respect to Plaintiff's new symptoms of lower back and right leg pain, Dr. Rodger felt that they were inconsistent with the myelogram findings, and had no treatment recommendations for them.
17. With regard to the cause of Plaintiff's C6-C7 herniated disc, Dr. Akiwumi initially opined that it was "feasible" and "possible" that Plaintiff's pushing and pulling of shopping carts while working for Defendant-Employer "can put enough strain on the neck . . . to *Page 9 
cause a lesion because what you require for herniation is to apply disproportionate . . . force or pressure so that you lose alignment." However, Dr. Akiwumi was also of the opinion that "it's difficult to tell" whether Plaintiff's herniation at the C6-C7 level of the spine was the result of the load being such that she was unable to maneuver it on one particular incident, or whether "she felt pain because of repeated strain over time." Plaintiff did not file an occupational disease claim for any condition happening over a period of time.
18. At Dr. Rodger's deposition, he initially agreed that if Plaintiff contends that her right arm pain began after pushing and pulling shopping carts while working for Defendant-Employer, and if she did not have any previous right arm or neck pain, then the pushing and pulling of these carts "could have caused" Plaintiff's herniation at the C6-C7 level of the spine. Dr. Rodger then agreed that if Plaintiff reported to the emergency department that she experienced shoulder and arm pain while pushing and pulling shopping carts the day before while at work, and she had no symptoms prior to this incident, then "it's more likely then that that is the cause of the rupture that we saw." However, Dr. Rodger further opined that if Plaintiff did not report to the emergency department experiencing pain while pushing and pulling shopping carts the day before while at work, then all that he could say is that "she probably had a ruptured disc around this time, around the time of February 21st, but I have no idea what caused it." The evidence shows Plaintiff did not report to the emergency department that she experienced pain while pushing and pulling carts at work on the day before, or around the time of February 21, 2007.
19. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's testimony that she heard and felt a "snap" in her right arm and experienced right arm pain while pushing and pulling shopping carts on or about February 19, 2007/February 20, 2007 *Page 10 
is not credible. Plaintiff did not report any incident related to pushing and pulling shopping carts until approximately 23 months after the alleged incident, despite having received medical treatment within a couple of days after the alleged incident and a diagnosis of a herniated disc and a recommendation of surgery approximately two months after the alleged incident.
20. Plaintiff's failure to return for follow-up treatment as directed after her July 28, 2008 surgery made it difficult for Dr. Rodger to definitively determine how much of Plaintiff's ongoing pain was related to her December 22, 2008 motor vehicle accident and how much was related to the herniation at the C6-C7 level of the spine which was the site of her surgery. Dr. Rodger opined, however, that Plaintiff's ongoing neck and right arm pain was most likely related to the herniation at the C5-C6 level of the spine that occurred after her July 28, 2008 surgery. According to Dr. Rodger, Plaintiff was on the road to recovery after the July 28, 2008 surgery, and the December 22, 2008 motor vehicle accident was the most likely cause of her remaining symptoms. But for the December 22, 2008 motor vehicle accident, Dr. Rodger was of the opinion that Plaintiff most likely could have been able to return to work and would not currently have physical restrictions. The Full Commission gives great weight to the opinion testimony of Dr. Rodger concerning the relationship between Plaintiff's December 22, 2008 motor vehicle accident and her current cervical spine complaints.
21. Plaintiff failed to prove by the greater weight of the evidence that she sustained an injury by accident or specific traumatic incident of the work assigned on February 19, 2007 or February 20, 2007.
22. Assuming arguendo, Plaintiff met her burden of proving that she sustained an injury by accident or specific traumatic incident of the work assigned during a cognizable period of time on or about February 19, 2007/February 20, 2007, the Full Commission finds as fact that *Page 11 
Plaintiff failed to give notice of her claim to Defendants until almost two years after her alleged work injury, that Plaintiff failed to show reasonable excuse for her failure to give timely notice, and that Defendants have shown that they were prejudiced by Plaintiff's untimely notice.
23. Ms. Linda Jarrett, Defendants' claims adjuster, stated in an Affidavit that it is her practice, as well as the policy of Defendants, to perform a complete investigation in order to determine the compensability of a workers' compensation claim. The investigation includes interviewing individuals with knowledge surrounding the alleged incident and arranging for an independent medical evaluation of the injured employee, if necessary. Ms. Jarrett was unable to investigate or direct Plaintiff's medical treatment due to Plaintiff's substantial delay in giving notice of his claim. Additionally, Ms. Jarrett was unable to obtain the surveillance video footage from Defendant-Employer for the night Plaintiff's injury is alleged to have occurred. The surveillance video footage could have been used to verify or refute Plaintiff's allegations regarding her actions on the night in question. Defendant-Employer's surveillance video footage is automatically erased within a few months after it is recorded.
24. In light of the above findings, the Full Commission need not address the issue of whether Defendants are entitled to a credit for the short-term and long-term disability compensation paid to Plaintiff.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Because Plaintiff's testimony concerning how her alleged February 19, 2007/February 20, 2007 work injury occurred is not found to be credible, Plaintiff failed to meet *Page 12 
her burden of proving that she sustained an injury by accident or specific traumatic incident of the work assigned to her by Defendant-Employer at a cognizable period of time, on or about February 19, 2007/February 20, 2007. Holley v. ACTS,Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); Young v. HickoryBus. Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000).
2. Assuming arguendo, Plaintiff met her burden of proving that she sustained an injury by accident or specific traumatic incident of the work assigned at a cognizable period of time on or about February 19, 2007/February 20, 2007, Plaintiff's claim is barred due to her failure to give notice to Defendants until almost two years after her alleged work injury, since Plaintiff has not proven she had a reasonable excuse for such delay and Defendants have shown they were prejudiced by the delay in receiving notice of Plaintiff's claim. N.C. Gen. Stat. § 97-22 (2010); Gregory v. W.A.Brown Sons, 363 N.C. 750, 688 S.E.2d 431 (2010).
3. Plaintiff returned to her pre-injury level of functionality with respect to her cervical spine condition before her December 22, 2008 motor vehicle accident. The December 22, 2008 motor vehicle accident caused a new and distinct injury or aggravation to Plaintiff's cervical spine. Plaintiff's cervical spine complaints after December 22, 2008 are related solely to the motor vehicle accident. Carter v. Northern Telecom,123 N.C. App. 547, 473 S.E.2d 774 (1996); Starr v. Paper Co.,8 N.C. App. 604, 175 S.E.2d 342, cert. denied,277 N.C. 112 (1970).
4. Because Plaintiff failed to meet her burden of proving that she sustained an injury by accident and/or specific traumatic incident of the work assigned at a cognizable period of time on February 19, 2007/February 20, 2007, the Full Commission need not address whether Defendants are entitled to a credit for the short-term and long-term disability compensation paid to Plaintiff.
 *********** *Page 13 
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is DENIED.
2. Each side shall bear its own costs.
This the ___ day of March 2011.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1